UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NANE JAN, LLC, a Florida
Corporation,

    Plaintiff,

v.                                Case No: 2:14-cv-208-FtM-29CM

SEASALT AND PEPPER, LLC, a
Florida Corporation,

    Defendant.

**OPINION AND ORDER**

This matter comes before the Court on plaintiff's Motion for Preliminary Injunction (Doc. #24) filed on August 4, 2014. Defendant filed a Response in Opposition (Doc. #29) on August 18, 2014, and the Court heard oral argument on September 15, 2014. Defendant filed supplemental evidence (Doc. #64; Doc. #65), prompting plaintiff to file rebuttal evidence (Doc. #66). For the reasons set forth below, plaintiff's motion is granted.

**I.**

Plaintiff Nane Jan, LLC (plaintiff) owns and operates a restaurant in Naples, Florida under the registered trademark name "SEA SALT" (SEA SALT or the Mark). Sea Salt opened in November 2008 and offers contemporary seafood cuisine that is prepared from the finest seasonal, organic and sustainable ingredients that come from local farmers and day boat fisherman whenever possible. (Id.

¶ 7.) Sea Salt's clientele expect and demand the highest quality service and pay top market rates for Sea Salt's fine dining experience. Plaintiff has received a number of accolades since opening, including Wine Spectator's "Award of Excellence" from 2009-2013, Grub Street New York's "101 of America's Most Delicious Noodle Dishes" in 2011, Gulfshore Life Magazine's "Best VIP Dining Service" in 2011, and Gulfshore Life Magazine's "Best Overall Restaurant" in 2010. (Id. ¶ 10.)

Plaintiff began using the SEA SALT mark on November 15, 2008, and registered it with the State of Florida on December 30, 2008.[1] (Doc. #1-1.) The Mark was subsequently registered with the United States Patent and Trademark Office (USPTO), and was added to the principal register on March 12, 2013, for use in association with restaurant and bar services.[2] (Doc. #1-3.)

On November 13, 2013, defendant Seasalt and Pepper, LLC, formerly known as Sea Salt Miami, LLC (defendant), filed Trademark Application Serial Number 86117966 with the USPTO for the standard character mark SEASALT AND PEPPER for use with restaurant and bar services. (Doc. #1-4.) The following day, defendant filed Trademark Application Serial Number 86118756 with the USPTO for the stylized mark SEASALT AND PEPPER for use with restaurant and

---

[1] Florida Registration No. T08000001417. (Doc. #1-1.)
[2] U.S. Registration No. 4,299,923. (Doc. #1-3.)

bar services. (Doc. #1-5.) On December 7, 2013, defendant opened Seasalt and Pepper, a restaurant located in Miami, Florida. (Doc. #1, ¶ 18.)

Plaintiff, upon learning of Seasalt and Pepper, notified defendant of its federal, state, and common law trademark rights in SEA SALT and demanded that defendant immediately cease and desist using the name Seasalt and Pepper. (Doc. #1-6.) Defendant refused to comply with plaintiff's demands and continues to operate under the name Seasalt and Pepper. (Doc. #1, ¶ 21.) On February 28, 2014, the USPTO rejected defendant's trademark applications due to the likelihood of confusion with plaintiff's Mark. (Doc. #1-7; Doc. #1-8.)

On April 14, 2014, plaintiff filed this lawsuit alleging claims under federal and state law for trademark infringement based on defendant's allegedly improper use of SEA SALT. Plaintiff alleges that defendant's unauthorized use of SEA SALT constitutes infringement, is misleading and deceptive, and is likely to cause consumer confusion. It is further alleged that defendant's unauthorized use of SEA SALT has caused and will continue to cause irreparable harm to plaintiff.

**II.**

Plaintiff seeks a preliminary injunction to enjoin defendant from using SEA SALT in connection with restaurant and bar services.

In order to obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest." Odebrecht Constr., Inc. v. Sec'y, Florida Dep't of Transp., 715 F.3d 1268, 1273 (11th Cir. 2013) (citing Grizzle v. Kemp, 634 F.3d 1314, 1320 (11th Cir. 2011)). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes 'the burden of persuasion' as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

**A. Substantial Likelihood of Success on the Merits**

The first factor in determining whether a preliminary injunction should issue is whether the plaintiff is likely to prevail on the merits of its claims. Plaintiff asserts that it is likely to prevail on its claims for trademark infringement under both federal and state law.[3]

---

[3]Plaintiff cites only to federal trademark law in analyzing the likelihood of success on its claims because the analysis of the Florida statutory and common law claims of trademark

Section 32(1) of the Lanham Act protects trademark owners against the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To establish a claim of trademark infringement, a plaintiff must show that (1) it owns a valid and protectable mark, and (2) the defendant's use of the mark is likely to cause confusion. Custom Mfg. & Eng'g, Inc. v. Midways Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007). Thus, plaintiff's success hinges upon whether SEA SALT is a protectable mark, and if so, whether defendant's use of the Mark is likely to cause confusion.

## 1. Validity of the Mark

To prevail on its claims of infringement, plaintiff must first establish that it owns a valid mark. Trademark protection "is only available to distinctive marks, that is, marks that serve the purpose of identifying the source of the goods or services." Knights Armament Co. v. Optical Sys. Tech., Inc., 654 F.3d 1179, 1188 (11th Cir. 2011) (quoting Welding Servs., Inc. v. Forman, 509

---

infringement is the same as a federal trademark infringement claim. (Doc. #24, p. 10 n.5.) See also Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1521 (11th Cir. 1991).

F.3d 1351, 1357 (11th Cir. 2007)). See also Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010). "Some marks are inherently distinctive; some marks, though not inherently distinctive, acquire distinctiveness by becoming associated in the minds of the public with the products or services offered by the proprietor of the mark; and some marks can never become distinctive." Forman, 509 F.3d at 1357 (citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768-69 (1992)). "Distinctiveness is a question of fact, whether the question is inherent distinctiveness or acquired distinctiveness." Id.

The four gradations of distinctiveness recognized in trademark law, listed in descending order of strength, are: (1) arbitrary or fanciful; (2) suggestive; (3) descriptive; and (4) generic. Knights Armament, 654 F.3d at 1188. The Eleventh Circuit has noted that "[t]he demarcation between each category is more blurred than it is definite." Saint Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1208 (11th Cir. 2009) (quoting Coach House Rest., Inc. v. Coach & Six Rests., Inc., 934 F.2d 1551, 1559 (11th Cir. 1991)).

An "arbitrary or fanciful" mark bears no logical relationship to the product it represents. Forman, 509 F.3d at 1357. A mark is "suggestive" if it refers to some characteristic of the goods, but requires imagination, thought and perception to reach a

conclusion as to the nature of the goods. Id. Marks that are arbitrary, fanciful, or suggestive are considered "inherently distinctive" because "their intrinsic nature serves to identify a particular source." Two Pesos, 505 U.S. at 768.

A "descriptive" mark identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients. Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 938 (11th Cir. 2010). A descriptive mark is not inherently distinctive and receives protection only if it acquires secondary meaning. Coach House Rest., 934 F.2d at 1560. The final and weakest category of distinctiveness is "generic." A "generic" mark describes the class to which a good belongs and is afforded no trademark protection because it is not distinctive and cannot acquire secondary meaning. Knights Armament, 654 F.3d at 1188.

Registration of a trademark on the principal register of the USPTO is prima facie evidence of validity and establishes a rebuttable presumption that the mark is protectable or distinctive. 15 U.S.C. § 1057(b); Forman, 509 F.3d at 1357 n.3. "The sort of presumption appropriate depends on whether or not the [USPTO] has required proof of secondary meaning." Forman, 509 F.3d at 1357 n.3. If proof of secondary meaning is not required, the presumption is that the mark is inherently distinctive. Id.

Here, the undisputed evidence shows that the USPTO placed SEA SALT on the principal register without proof of secondary meaning. (Doc. #1-3.) Plaintiff's Mark is therefore presumed to be inherently distinctive, and the burden to show otherwise lies with defendant.

Defendant argues that SEA SALT is merely descriptive and should not be afforded any protection because there is no evidence of secondary meaning. Specifically, defendant asserts that the evidence overwhelmingly reflects that SEA SALT is descriptive because it identifies the ingredients and characteristics of the food and drinks served at plaintiff's restaurant. In response, plaintiff argues that the presence of salt in the food and drinks served at its restaurant does not render the Mark descriptive because plaintiff does not sell salt. The Court agrees with plaintiff.

A suggestive mark suggests some characteristic of the product or service to which it is applied, but requires a leap of the imagination by the consumer to determine the nature of the product or service. Frehling Enters., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1335 (11th Cir. 1999). In contrast, a descriptive mark conveys an immediate idea of the qualities, characteristics, effect, purpose, or ingredients of a product or service. Caliber Auto. Liquidators, 605 F.3d at 938. For example, "Vision Center"

would be a descriptive mark when used for a business that sells eyeglasses, and "Penguin" would be a suggestive mark for refrigerators. Frehling, 192 F.3d at 1335.

Here, plaintiff uses SEA SALT in conjunction with a restaurant and bar offering contemporary seafood cuisine. Although salt serves as a focal point at plaintiff's restaurant, plaintiff does not sell salt. Due to the disconnect between the term "sea salt" and restaurant and bar services, the Court finds that SEA SALT does not convey an immediate idea of the services offered by plaintiff and requires an effort of the imagination to connect SEA SALT to restaurant and bar services. In fact, "sea salt" is primarily used in connection with cooking salts and spices or packaged food, not restaurant and bar services.[4] (Doc. #44-13.) Because a customer who sees SEA SALT could not readily discern that plaintiff operates a restaurant and bar offering contemporary seafood cuisine, plaintiff's Mark is at least suggestive.[5] See Mango's Tropical Cafe, Inc. v. Mango Martini Rest. & Lounge, Inc., 844 F. Supp. 2d 1246, 1253 (S.D. Fla. 2011) (finding "Mango" to be

---

[4]Defendant has submitted evidence indicating that there are thirty-one registered trademarks using the terms "sea" and "salt." Of the thirty-one marks, plaintiff is the only one to use "sea" and "salt" for bar and restaurant services. (Doc. #44-13.)

[5]The fact that defendant sought trademark protection for SEASALT AND PEPPER inherently acknowledges that defendant also believes that SEASALT is valid and protectable. MNI Mgmt., Inc. v. Wine King, LLC, 542 F. Supp. 2d 389, 409 (D.N.J. 2008).

suggestive when used identify restaurant and bar services). Accordingly, plaintiff has met its burden of establishing that it owns a valid and protectable mark.

## 2. Likelihood of Confusion

To determine whether there is a likelihood of confusion, the Eleventh Circuit has set out seven factors for consideration: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the services; (4) the similarity of the parties' retail outlets, trade channels, and customers; (5) the similarity of advertising media; (6) the defendant's intent; and (7) actual confusion. Custom Mfg., 508 F.3d at 647-48. The type of mark and evidence of actual confusion usually should be given the most weight. Id. at 650.

### i. Type of Mark

Classifying the type of mark a plaintiff has determines whether it is strong or weak. "The stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection is receives." Frehling, 192 F.3d at 1335 (citing John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 973 (11th Cir. 1983)). In gauging the strength of a mark, a Court must first consider the distinctiveness of the mark. Id. Here, plaintiff is likely to show that its Mark is at least suggestive;

thus, SEA SALT is entitled to considerable protection without a showing of secondary meaning.

Another important factor in gauging the strength of a mark is the degree to which third parties make use of the mark. Frehling, 192 F.3d at 1336. As previously stated, defendant has presented evidence indicating that there are thirty-one registered trademarks using the terms "sea" and "salt," most of which bear some relation to food or spices. Although the terms "sea" and "salt" are used in a number of trademarks, plaintiff is the only trademark holder to use "sea" and "salt" in connection with restaurant and bar services. (Doc. #44-13.) Defendant has also presented evidence of approximately six restaurants in the United States using the terms "sea" and "salt" in their names. (Doc. #44-10; Doc. #65-1.) This, however, does little to the strength of plaintiff's Mark because the restaurants are scattered throughout the country. Prior to the opening of Seasalt and Pepper, plaintiff operated the only restaurant in Florida using "sea" and "salt" in its name. Based on the evidence, it does not appear that the use of "sea salt" is so extensive or widespread as to considerably weaken plaintiff's Mark. Accordingly, the Court finds that SEA SALT is a strong mark and entitled to significant protection. See Blackwall Grp., LLC v. Sick Boy, LLC, 771 F. Supp. 2d 1322, 1326 (M.D. Fla. 2011).

**ii. Similarity of the Marks**

The next factor to consider in evaluating the likelihood of confusion is the degree to which the marks are similar. In undertaking such an evaluation, the court compares the marks at issue and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used. Frehling, 192 F.3d at 1337. The more similar the marks are in their sound, appearance, and manner, the more likely it is that a reasonable consumer will be confused as to the source of the product that each mark represents. Id.

In this matter, the marks are indisputably similar in one key way, both use the terms "sea" and "salt." Defendant, however, argues that the similarity stops there because "Seasalt and Pepper" contains additional words and is stylized in a different fashion. A review of the marks (shown below) confirms that they use different fonts, colors, and pictures. A comparison of the marks also reveals that the dominant focus of both marks is on the terms "sea" and "salt."




Such a focus favors similarity. See Frehling, 192 F.3d at 1337. As noted by the USPTO's rejection letters (Doc. #1-7; Doc. #1-8), the presence of a strong distinctive term as the first word in both parties' marks renders the marks similar. Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1372 (Fed. Cir. 2005).

The evidence also shows that both the media and Carlos Miranda, a co-owner of Seasalt and Pepper, LLC, commonly refer to defendant's restaurant as "Seasalt." (Doc. #24-3, pp. 8, 10, 12, 16, 18-20, 22-23, 25; Doc. #64-2, p. 1.) The Court finds this to be indicative of similarity.

Because the marks are similar in some regards and distinct in others, the Court concludes that this factor weighs, albeit slightly, in favor of plaintiff.

### iii. Similarity of the Services

The evidence shows that both parties provide restaurant and bar services with a focus on seafood. Because the services provided are of a similar nature, the Court finds that this factor weighs in favor of plaintiff.

### iv. Similarity of the Parties' Retail Outlets and Customers

The fourth factor takes into consideration where, how, and to whom the parties' products are sold. Frehling, 192 F.3d at 1339. A plaintiff need not produce evidence of direct competition between

the parties for the weight of this factor to favor a likelihood of confusion; however, some degree of overlap between the parties' retail outlets and customer bases should be present.  Id.

Plaintiff contends that parties' retail outlets and customer bases are similar because both parties cater to high-end consumers of seafood cuisine and offer their services at up-scale venues.  The record, however, is void of evidence suggesting any customer overlap or similarities in the parties' retail outlets.  As such, the Court finds that this factor favors defendant.

    **v.**    **Similarity of Advertising Media**

This factor looks to each party's method of advertising. Plaintiff concedes that it has no evidence as to the scope or nature of defendant's advertising campaigns.  The Court will therefore construe this factor in favor of defendant.

    **vi.**    **Defendant's Intent**

The sixth factor in the likelihood of confusion analysis is whether the defendant acted in bad faith.  This factor alone may justify an inference of confusion if it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation.  Frehling, 192 F.3d at 1340.  Plaintiff believes that discovery will establish defendant's intention to benefit from the good will associated with SEA SALT because defendant continued to operate under the

trade name "Seasalt and Pepper" after its trademark applications were denied by the USPTO due to the likelihood of confusion with plaintiff's Mark. The record, however, is void of any evidence suggesting that defendant acted in bad faith. The Court finds that this factor favors defendant.

### vii. Actual Confusion

The final factor in the likelihood of confusion analysis is actual consumer confusion. Evidence of actual confusion is the best evidence of a likelihood of confusion but is not a prerequisite to the issuance of a preliminary injunction. Custom Mfg., 508 F.3d at 649. To establish actual confusion, plaintiff has submitted an affidavit from Tanya Buchanan (Buchanan), the general manager at plaintiff's restaurant. (Doc. #24-4.) According to the affidavit, Buchanan has personally received approximately thirty inquiries as to whether there was an affiliation between Sea Salt and Seasalt and Pepper. (Id. ¶ 6.) Approximately twenty of the inquiries raised questions pertaining to the lawsuits in which Seasalt and Pepper is involved. (Id. ¶ 7.) Buchanan also receives approximately ten calls per month from people attempting to confirm or question a restaurant receipt from "Seasalt and Pepper," not "Sea Salt." (Id. ¶ 8.) The Court finds that this evidence is indicative of actual consumer confusion.

The evidence also establishes that two of plaintiff's suppliers, Freshpoint and Prime Line Distributors, were confused about the affiliation, or lack thereof, between "Sea Salt" and "Seasalt and Pepper." (Doc. #1-9, p. 1; Doc. #24-1, p. 2; Doc. #24-2, pp. 1-3.) The Eleventh Circuit has noted that supplier confusion is relevant evidence of actual confusion because a supplier is presumably "familiar with an enterprise since he is actually providing it with goods." Frehling, 192 F.3d at 1341 (quoting Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1167 (11th Cir. 1982)). Because plaintiff has submitted evidence of consumer and supplier confusion, the Court finds that this factor weighs heavily in plaintiff's favor.

The Court has considered the seven factors in light of the evidence submitted by the parties and concludes the balance of factors indicates there is a likelihood of confusion among consumers in the marketplace. Plaintiff has therefore demonstrated a substantial likelihood of success on the merits of its trademark infringement claims.

**B. Irreparable Harm**

The Eleventh Circuit has acknowledged that "once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim," there is a "presumption of irreparable harm." N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1227

(11th Cir. 2008).  The viability of this presumption, however, has been called into question by the Supreme Court's decision in eBay Inc. v. MercExchange, LLC, 547 U.S. 388 (2006).  See Axiom 522 F.3d at 1228.  Because the Eleventh Circuit declined to resolve this issue, a court may grant a preliminary injunction "without the benefit of a presumption of irreparable injury," or may "decide that the particular circumstances of the instant case bear substantial parallels to previous cases such that a presumption of irreparable injury is an appropriate exercise of its discretion in light of the historical traditions."  Id.

The Court need not apply the presumption in this matter because the evidence establishes a likelihood of irreparable harm. As already discussed, plaintiff has demonstrated a likelihood of confusion in that consumers may incorrectly associate "Seasalt and Pepper" with "Sea Salt."  Plaintiff has also presented ample evidence of negative press and publicity associated with defendant's restaurant.  (Doc. #24-3.)  The operation of defendant's restaurant under the name "Seasalt and Pepper" is likely to cause irreparable harm to plaintiff's reputation because plaintiff will not have the ability to control the quality of the services provided[6] or escape any harm caused by the negative

---

[6]See Zachary Fagenson, *Go to Seasalt and Pepper for the View, but Not the Food*, The Miami New Times, May 6, 2014, at http://blogs.miaminewtimes.com/shortorder/2014/05/go_to_seasalt_

publicity associated with defendant's restaurant.[7]  Damage to plaintiff's reputation and goodwill would be difficult to quantify and could not be undone through an award of money damages. Plaintiff has therefore demonstrated a likelihood of irreparable harm.

**C.   Balance of the Harm to the Parties**

The Court is satisfied that the risk to the reputation and goodwill associated with plaintiff's Mark should defendant's use of Seasalt and Pepper continue outweighs any hardship caused by enjoining the use sea salt.

**D.   Public Interest**

An injunction is not adverse to the public interest because the public interest is served by preventing consumer confusion in the marketplace.  Davidoff & CIE, S.A. v. PLD Int't Corp., 263 F3d 1297, 1304 (11th Cir. 2001).

Accordingly, it is hereby

**ORDERED:**

1.   Plaintiff's Motion for Preliminary Injunction (Doc. #24) is **GRANTED.**

---

and_pepper_for_t.php.  (Doc. #24-3, pp. 17-21.)

[7] See Zachary Fagenson, *Seasalt and Pepper Chef Alfredo Alvarez Walks Out*, The Miami New Times, Sept. 24, 2014, at http://blogs.miaminewtimes.com/shortorder/2014/09/seasalt_and_pepper_chef_alfredo_alvarez_walks_out.php.

    a.    Defendant Seasalt and Pepper, LLC and all those acting in concert with it are preliminary enjoined and restrained from using the SEA SALT mark in association with restaurant and bar services. Defendant shall immediately terminate its use of the SEA SALT mark in advertising and promotional materials, on signage and menus, and on websites.

    b.    Defendant shall file a notice of compliance with the Court within **thirty (30) days** of this Opinion and Order.

    c.    Pursuant to Fed. R. Civ. P. 65(c), plaintiff shall post a bond in the amount of $25,000.00, as payment of damages to which defendant may be entitled for wrongful injunction or restraint.

**DONE and ORDERED** at Fort Myers, Florida, this ___14th___ day of October, 2014.

_/s/ John E. Steele_
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of Record